## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LORENZO BENNETT, SR** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **CIVIL ACTION NO** |
| **VS.** | ) | **1:15-cv-00165** |
| | ) | |
| **BANK OF NEW YORK MELLON** | ) | |
| **fka THE BANK OF NEW YORK** | ) | |
| **AS TRUSTEE FOR THE** | ) | |
| **CERTIFICATEHOLDERS OF** | ) | |
| **CWMBS REPERFORMING** | ) | |
| **LOAN REMIC TRUST** | ) | |
| **CERTIFICATES, SERIES 2005-** | ) | |
| **R1; BANK OF AMERICA, NA** | ) | |
| **d/b/a BAC HOME LOAN** | ) | |
| **SERVICING, LP; NATIONSTAR** | ) | |
| **MORTGAGE, LLC** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## AMENDED COMPLAINT

Comes now, Lorenzo Bennett, Sr. and through his attorney of record and amends his original complaint in accordance with the Federal Rules of Civil Procedure follows:

1.    Plaintiff, Lorenzo Bennett, Sr. ("Plaintiff") resides at 1063 Heidi Street, Mobile, AL 36608 with his wife, Angela Bennett.

2.    Defendant, Bank of America, N.A. d/b/a BAC Home Loans Servicing,

LP,( "Bank of America") is in an entity doing business in Mobile County, Alabama which allegedly serviced, or was otherwise involved in the servicing of Plaintiff's mortgage loan.

3.     Defendant, Bank of America, is a "debt collector" of the Plaintiff's "debt" as those terms are defined in the FDCPA, 15 U.S.C. § 1692a.

4.   Defendant, Bank of America, is a loan "servicer" of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2).

5.     Defendant, Bank of New York Mellon f/k/a/ The Bank of New York, As Trustee for the Certificateholders of CWMBS Reperforming Loan REMIC Trust Certificates, Series 2005-R1, ("BONY") is in an entity doing business in Mobile County, Alabama which allegedly owns or was otherwise involved in the servicing of Plaintiff's mortgage loan.

6.     Defendant, Nationstar Mortgage, LLC, ("Nationstar") is in an entity doing business in Mobile County, Alabama which allegedly serviced, or was otherwise involved in the servicing of Plaintiff's mortgage loan.

7.     Defendant, Bank of America, is in an entity doing business in Mobile County, Alabama which allegedly serviced, or was otherwise involved in the servicing of Plaintiff's mortgage loan.

2

8.     Defendant, NationStar, is a "debt collector" of the Plaintiff's "debt" as those terms are defined in the FDCPA, 15 U.S.C. § 1692a.

9.     Defendant, NationStar, is a loan "servicer" of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2).

10.    On or about October 23, 1997, the Plaintiff received a loan in the amount of $72,420.00.00 from Southtrust Mortgage Corporation. The mortgage was recorded in RLPY Book 4519, Page1322 with the probate court of Mobile County, and lists Southtrust Mortgage Corporation as "Lender".

11.    Plaintiff also executed a note payable to Southtrust Mortgage Corporation.

12.    Countrywide Home Loan Servicing, L.P. subsequently took over the servicing of the loan from Southtrust.

13.    Thereafter, Defendant, Bank of America, who was then d/b/a BAC Home Loans, L.P., subsequently took over the servicing of the loan from Countrywide.

14.    Thereafter, Defendant, NationStar, began the servicing of the loan from Defendant, Bank of America.

15.    A servicer of the loan collects payments from the borrower, sends

3

payments to the lender and handles administrative aspects of the loan.

16.    The plaintiff's mortgage is a VA guaranteed loan.

17.    In 2008, the Plaintiff began having financial trouble due to circumstances beyond his control, and thus had trouble making their mortgage payments.

18.    Unable to find a workable solution with Countrywide, Plaintiff filed a Chapter 13 with the United States Bankruptcy Court for the Southern District Alabama; Case No.:. 08-14471 ("Plaintiff's Chapter 13") and included the arrears.

19.    Countrywide made a proof of claim in Plaintiff's Chapter 13.

20.    The Plaintiff continued to work to bring the loan current, but due to errors on the account, the loan again fell behind.

21.    In a further effort to bring the loan current, in 2009, Angela Bennett, wife the Plaintiff, filed a Chapter 13 in the United States Bankruptcy Court for the Southern District of Alabama; Case No.: 09-13018 ("Wife's Chapter 13").

22.    On or about July 12, 2010, BAC Home Loan Servicing, L.P. ("BAC") filed a proof of claim totaling $9,382.37 for arrearage on the loan for 10/2008 - 07/2009 in Wife's Chapter 13 and the bankruptcy trustee made payments to pay the arrearage for these months.

24.    The BAC claim overlapped with the proof of claim filed by

4

Countrywide in Plaintiff's Chapter 13 bankruptcy, which included 10/2008 and 11/2008 arrearage on this same loan.

25.    As a result, Plaintiff's bankruptcy trustee paid this same arrearage for the months of 10/2008 and 11/2008.

26.    Although the loan has been paid by the bankruptcy trustees in both bankruptcies for arrearage in the months of 10/2008 and 11/2008, the account was never properly credited causing a continuing error in the accounting throughout the servicing of this loan.

27.    On 07/12/2010 BAC filed a proof of claim with the bankruptcy court in the Wife's Chapter 13 claiming the escrow shortage was $2,050.05.

28.    Per payment histories of the loan dated 07/27/10 and 06/20/2011 the loan incorrectly reflected an escrow shortage of $4,296.44 .

29.    A 06/19/2014 payment history shows the loan has been carrying the same escrow shortage of $4,296.44 for years, despite the 07/12/2010 BAC filed a proof of claim showing the escrow shortage was $2,050.05.

30.    Had BAC corrected the escrow to reflect an escrow shortage of $2,050.05, Plaintiff contends he would now have had a positive escrow balance in the account.

31.    In January 2013, the Consumer Financial Protection Bureau issued a

number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

32.    Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (Regulation Z) (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

33.    The Plaintiff's mortgage loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

34.    Bank of America and NationStar are subject to the aforesaid Regulations and do not qualify for the exception for "small servicers" as defined in 12 C.F.R. § 1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. § 617.700.

35.    Plaintiff is asserting a claim for relief against Bank of America and NationStar for breach of the specific rules under Regulation X as set forth below.

36.    Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

37.    Bank of America demanded past due payments from the Plaintiff, and

accelerated the loan demanding full payment of an inflated loan balance. Each letter and statement sent to Plaintiff by Bank of America represented that Bank of America was a debt collector.

38.    Plaintiff contacted Bank of America to try to work out a plan to bring the loan current in an effort to avoid a foreclosure by BONY, the owner of the loan, to no avail. Specifically, on September 2, 2014 Plaintiff wrote to Bank of America requesting loss mitigation and notifying it that Plaintiff had experienced financial difficulty resulting in a default of the mortgage.

39.    Bank of America received the request but failed to timely acknowledge receipt of the request, and further failed to timely act on the request.

40.    On August 29, 2014 three letters were sent to Bank of America notifying them of the errors regarding the servicing of the Plaintiff's loan with regard to the escrow, arrearage, and misapplication of the payments received in the Plaintiff's Chapter 13 and his Wife's Chapter 13.

41.    Bank of America received the letters but failed to timely acknowledge the notice of error within 5 business days, failed to correct to the notice of errors on the account, and continued to furnish adverse information to the consumer reporting agencies regarding payments that were subject of the dispute and errors.

42.    Without correcting the errors on the account, Bank of America,

transferred the account to Nationstar for servicing.

43.     On or about December 24, 2014 Defendant Nationstar sent a statement to Plaintiff and claimed Plaintiff was 1298 days delinquent, owed $30,091.78, and had a negative escrow balance of $8,643.04.

44.     On or about January 12, 2015 Nationstar wrote to Plaintiff claiming the account was 42 payments delinquent and due for August 1, 2011 installment.

45.     Nationstar further advised the Plaintiff that if Plaintiff had requested help, with regard to the delinquency, the procedure was still proceeding and no further action was required of the Plaintiff during the process.

46.     On or about January 21, 2015 Defendant Nationstar sent a statement to Plaintiff and claimed Plaintiff was 1298 days delinquent, owed $30,807.78, and had a negative escrow balance of $8,643.04.

47.     On or about January 22, 2015 Defendant Nationstar sent a delinquency notification to the Plaintiff and demanded $30,807.78 and further notified the Plaintiff that it had completed the first filing to start foreclosure.

48.     On or about February 19, 2015 Defendant Nationstar sent a delinquency notification to the Plaintiff and demanded $31,524.24.

49.     Each letter and statement sent to Plaintiff by NationStar represented that NationStar was a debt collector.

50.     In response to the statements, demands for payment and threats of foreclosure, Plaintiff wrote to Nationstar through their attorney, and advised them of the errors on the account and disputed the debt, but Nationstar refused to correct them and pushed forward with a foreclosure sale set for February 19, 2015 on behalf of   BONY.

51.     In addition, on December 4, 2014 Plaintiff wrote to Nationstar requesting loss mitigation and notifying it that Plaintiff had experienced financial difficulty resulting in a default of the mortgage.

52.     NationStar received the request but failed to timely acknowledge receipt of the request, and further failed to timely act on the request.

53.     The Defendants, Bank of America and NationStar, have failed to provide Plaintiff's with a good faith opportunity to work out the loan and further to avoid foreclosure as required by VA servicing guidelines, the subject mortgage and mortgage note and federal law.

54.     The subject loan is guaranteed under the VA Housing Loan Program and is insured by the United States. The purpose of this program is to enable veterans to obtain home loans and to minimize the risk of foreclosure and the loss of home ownership. _U.S. v. Shimer_, 367 U.S. 374, 383 (1961).

55.     Because the subject loan is a VA mortgage, its payment is guaranteed

and insured by the United States pursuant to 38 U.S.C. §3703(a)(1)(A).   This loan

was made on the terms and pursuant to the conditions, regulations, and restrictions

prescribed by the Secretary of Veterans Affairs found at 38 U.S.C. §3703(a)(2)(B)

and 38 U.S.C. §3703(c)(1).   Further, 38 C.F.R. 36.4300 to 38 C.F.R 36.4393 set out

the federal regulations prescribed by the Secretary of Veterans Affairs applicable to

the subject mortgage and referenced in the subject mortgage and mortgage note.

These regulations and guidelines require Lender's and its agents to engage in

meaningful pre-foreclosure default servicing to try to avoid the foreclosure of the

home.

    56.    The subject mortgage and mortgage note also require Lender's and its

agents to engage in meaningful pre-foreclosure default servicing to try to avoid the

foreclosure of the home.

    57.    The mortgage contains a VA Guaranteed Loan and Assumption Policy

Rider which provides:

> VA GUARANTEED LOAN COVENANT: In addition to the
> covenants and agreements made in the Security Instrument, Borrower
> and Lender further covenant and agree as follows: If the indebtedness
> secured hereby be guaranteed or insured under Title 38, United States
> Code, such Title and Regulations issued thereunder and in effect on the
> date hereof shall govern the rights, duties and liabilities of Borrower
> and Lender. Any provision of the Security Instrument or other
> instruments executed in connection with such indebtedness which are
> inconsistent with said Title or Regulations, including,
> but not limited to, the provision for payment of any sum in connection

with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

58.    Assuming that Bank of New York has the rights of the Lender, it and its agents failed to provide the mandated pre-foreclosure loss mitigation opportunities required for residential mortgages pursuant to the guarantee and insurance coverage provided to Lender by the Veterans Administration (VA) pursuant to Title 38 of the U.S. Code, in effect on the date the Plaintiff executed the mortgage, and currently applicable to the loan.   Bank of New York and its agents failed to extend to Plaintiff all reasonable forbearance opportunities, including the opportunity to apply for a mortgage foreclosure avoidance workout, and failed to give him the required good faith consideration of temporary suspension of payments and extension of the loan despite their numerous attempts to communicate with Bank of America and NationStar, Lender's agents, to work out a payment plan for this mortgage debt.

59.    38 U.S.C. 36.4346(a) and the VA Handbook H26-94-1, both applicable to Plaintiff's loan, require Lender and it's servicing agent of the subject mortgage to establish a delinquent loan servicing program which, among other things, requires Lender and it's agents to:

a.   arrange for an individual loan consultation with Plaintiff;

b.   have a collection staff trained in techniques of loan servicing and counseling delinquent borrowers, including the pursuit of alternatives to foreclosure available to Plaintiff in his status as delinquent borrowers;

c.   have guidelines for individual analysis of the delinquency in Plaintiff's mortgage;

d.   evaluate repayment proposals with Plaintiff;

e.   employ flexible collection techniques to adapt to Plaintiff's circumstances;

f.   establish timely, helpful and responsive telephone contact with Plaintiff to determine why payment was not made on the mortgage; alternatively, arrange a face-to-face interview with Plaintiff to solicit information to evaluate the prospects for curing the mortgage default including determining whether the granting of forbearance or other such relief assistance would be appropriate to assist him in avoiding foreclosure and the loss of home ownership by a veteran and that veteran's family; and

g.   make a reasonable effort to determine the reason for Plaintiff's default and whether such reason is temporary or permanent, and to determine their income and monthly household and debt expenses and obligations, in order to arrive at a realistic and mutually satisfactory arrangement for curing the default.

60.     Plaintiff made many efforts to access foreclosure prevention

services but has been denied the required opportunity to access and obtain in good

faith mortgage servicing options designed to avoid foreclosure of this VA mortgage.

See *Norwest Mortgage Inc. v. Rhoads*, 5 Fla. L. Weekly 361 (Fla. 12th Judicial

Circuit 1998).

61.     Plaintiff was threatened with a foreclosure multiple foreclosure actions by BONY, with the latest being February 19, 2015, without allowing Plaintiff to pursue contractually and federally required loss mitigation opportunities.

62.     The Defendant, BONY, is not the proper party to conduct the foreclosure sale as it is not the owner of the debt.

63.     In the recent case of <u>Nelson v. Federal National Mortgage Association</u>, 2012 WL 1650497 (Ala.Civ.App, May 11, 2012), the Alabama Court of Civil Appeals held:

> "Our case law interpreting <u>§ 35–10–12</u> holds that the owner of the debt may foreclose on property that is the subject of a mortgage securing that debt if the owner is the holder of the promissory note at the time the owner initiates foreclosure proceedings. See <u>Coleman v. BAC Servicing, supra;</u> <u>Perry v. Federal Nat'l Mortg. Ass'n, supra.</u>

64.     The Defendant New York Mellon is not the original lender. 1641(g)(1)(B) requires a new creditor to provide the date of transfer, which has not occurred.

65.     New York Mellon knows that it has no right under the contract, Alabama law, or federal law to threaten or conduct a foreclosure.

66.     The mortgage governs acceleration and sets for the lenders remedies and provides that Lender shall given notice to the borrower prior to acceleration following borrower's breach of any covenant or agreement in this Security

13

Instrument.

67.    Defendants BONY, through it's servicers Bank of America and NationStar, has refused to engage in a legitimate and good faith mortgage foreclosure avoidance workout, accept the proper payments, have inflated the amount due, and have threatened to foreclose on Plaintiff without any basis to do so.

68.    Defendants BONY, through it's servicers Bank of America and NationStar, improperly applied, charged, or otherwise handled expenses, charges, fees, payments, and the loss mitigation process (including loan modification) with Plaintiff.

69.    Defendants BONY, through it's servicers Bank of America and NationStar, did not conduct all required pre-foreclosure counseling and loss mitigation efforts as required under the law and the documents controlling the conduct of Defendant servicers, including servicing requirements and regulations.

70.    Transfers were allegedly made ultimately resulting in Defendant, BONY, allegedly having the loan and/or the mortgage.

71.    Plaintiff alleges that all such transfers were improper, void, and without legal effect.

72.    The note and mortgage were improperly split from each other, which results in the mortgage being void.

73.     The threatened foreclosure sale is without proper notice to Plaintiff and in direct derogation of Alabama common and statutory law.

74.     Defendants BONY, through it's servicers Bank of America and NationStar, lacks standing to foreclose in that they have no present legal right to enforce the security agreement in the foreclosure action.

75.     Defendants BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar, acted within the line and scope of their employment and/or agency relationship.

## COUNT ONE
## NEGLIGENCE/WANTONESS

76.     Plaintiff realleges all paragraphs as if set out here in full.

77.     Federal law and regulations impose a duty of affirmative care on the servicing Defendants Bank of America and NationStar. In fact, a servicer violates the duty imposed by RESPA when it fails to respond to a request for loss mitigation, fails to process an application for loss mitigation and fails to postpone proceeding with a foreclose until a decision is made with regard to loss mitigation. A servicer's failure to consider borrower for loan work out in violation of the guidelines constitutes breach of duty of care as well. State law establishes a duty for a servicer to provide the borrower with an accurate accounting of amounts due to

cure a default and a duty of care in servicing loans to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records.

78.   As set out more specifically above, on September 2, 2014 Plaintiff applied for loss mitigation with Defendant, Bank of America.

79.   As set out more specifically above, on December 4, 2014 Plaintiff applied for loss mitigation with Defendant, Nationstar.

80.   On February 12, 2015, Defendant, Nationstar, wrote to Plaintiff falsely representing that since their acquisition of the account, it had not received an inquiry or request for payment assistance from the Plaintiff.

81.   Defendants BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar, were negligent and/or wanton in failing to respond to Plaintiff's request for loss mitigation and failing to process the application for loss mitigation. Defendants BONY, through it's servicer NationStar, and Defendant, NationStar , were negligent and/or wanton in proceeding with a foreclosure as a decision was not yet made with regard to loss mitigation of Plaintiff's application for loan assistance.

82.   As out above, the Plaintiff's loan is a VA guaranteed loan. The mortgagee of a VA mortgage is required to exhaust all possible alternatives before

pursing foreclosure. There are three options for reinstatement of a VA loan: a repayment plan, special forbearance, and a loan modification.

83.    Defendants BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar ,were also negligent and/or wanton is their failure to consider Plaintiff for loan a work in violation of VA regulations and guidelines.

84.     Defendants BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar were negligent and/or wanton in accelerated the debt made the basis of this suit, and thereafter initiated a foreclosure on Plaintiff's property, with the last foreclosure sale date of February 19, 2015.

85.    Defendants BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar, negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by Plaintiff, negligently caused forced placed property insurance to be obtained, negligently defaulted Plaintiff, was negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by

failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account and failing to remove the adverse reporting from Plaintiff 's credit once they disputed the same; and negligent in their representations to the Plaintiff.

86.    Defendants BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar acted negligently and/or wantonly with regard to servicing and loss mitigation assistance which they were obligated to provide to the Plaintiff.

87.    As a direct result of the said negligence and/or wantonly, Plaintiff was injured and damaged as alleged above and has suffered mental anguish, physical illness, economic injury.

88.    As a result thereof, Defendants are liable for all natural, proximate and consequential damages due to their negligence and for all natural, proximate and consequential damages due to their wantonness as well as punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendants for their wrongful actions, and for all other relief as the Court deems proper.

**COUNT TWO**
**(Breach of Contractual Obligations of**
**Good Faith and Fair Dealing)**

89.     Plaintiff adopts the above paragraphs as if fully set forth herein.

90.     The mortgage and note constitute a contract between Plaintiff and mortgagee, including a duty of good faith and fair dealing.   Pursuant to an implied covenant in the subject contracts, Defendants BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar, had a duty not to do anything which would deprive Plaintiff of the benefits of those contracts, and had a duty to do everything that the contracts presupposed each of the parties would do to accomplish the purpose or purposes of the subject contracts.

91.   Each Defendant acted in breach of the implied covenant of good faith and fair dealing, and its duties thereunder, as described hereinabove.

92.     This breach proximately resulted in damage to Plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendants for their wrongful actions, and for all other relief as the Court deems proper.

## COUNT THREE
## BREACH OF CONTRACT

93.     Plaintiff realleges all paragraphs as if set out here in full.

94.     As part of the agreement, Defendants BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar, promised to maintain an escrow account for Plaintiff for the purpose of distributing taxes and insurance.

95. Defendant BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar, overcharged Plaintiff's escrow account over a period of more than one year.

96. Defendant BONY, through it's servicers Bank of America and NationStar, and Defendants, Bank of America and NationStar, refused to properly credit Defendant's monthly payments.

97. As a result of Defendant BONY's, through it's servicers Bank of America and NationStar, and Defendants', Bank of America and NationStar, failure to perform in accordance with the contract, Plaintiff has suffered and continues to suffer financial harm including but not limited to:

    a. Increased interest expenses on his mortgage;

    b. Improperly charged late fees on his mortgage;

    c. Interest on the property tax payments;

    d. Damage to his credit report and credit score; and

    e. Attorney's fees and costs associated with attempting to correct this dispute.

98. Defendant BONY, through it's servicers NationStar, and Defendant, NationStar, breached the contracts with Plaintiff and thereby caused Plaintiff incidental and consequential damages (including mental anguish).

99.    This includes the improper accounting, charges, payment processing, loss mitigation efforts and the foreclosure process itself.

100.   Plaintiff claims all damages allowable under law.

WHEREFORE, Plaintiff demands judgment against the Defendants for their wrongful actions, and for all other relief as the Court deems proper.

## COUNT FOUR
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

101.   Plaintiff realleges all paragraphs as if set out here in full.

102.   Defendant servicers, Bank of America and Nationstar, are considered "debt collectors" under the FDCPA as when each began servicing the loan, the loan was in default and serviced as a defaulted loan.

103.   Defendant servicers, Bank of America and Nationstar have attempted to collect the debt. Each demand for payment sent to Plaintiff by Bank of America and NationStar represented to Plaintiff that they were a debt collector.

104.   The debt is the loan for the Plaintiff's house and thus qualifies as a consumer or personal debt under the FDCPA.

105.   Defendant servicers, Bank of America and Nationstar, violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), committed

state law violations in attempting to collect the debt and invaded Plaintiff's personal

and financial privacy by it's illegal efforts to collect a consumer debt from Plaintiff.

106.   Congress found it necessary to pass the FDCPA due to rampant

abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled

"Congressional findings and declaration of purpose" and it states as follows:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair
debt collection practices by many debt collectors. Abusive debt collection practices
contribute to the number of personal bankruptcies, to marital instability, to the loss
of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate
to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection
practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in
interstate commerce and through means and instrumentalities of such commerce.
Even where abusive debt collection practices are purely intrastate in character, they
nevertheless directly affect interstate commerce.

(e) It is the purpose of this title to eliminate abusive debt collection practices
by debt collectors, to insure that those debt collectors who refrain from using
abusive debt collection practices are not competitively disadvantaged, and to
promote consistent State action to protect consumers against debt collection abuses.

108.   Defendant servicers, Bank of America and Nationstar, violated the

FDCPA, 15 U.S.C. § 1692f, by using unfair and unconscionable means to collect the

debt owed by the Plaintiff, including the collecting and attempting to collect of

interest and other charges, fees and expenses not authorized by the original Loan and Modification Agreement, or otherwise legally chargeable to the Plaintiff, as more fully set forth above.

109.   Defendant servicers, Bank of America and Nationstar, violated the FDCPA, 15 U.S.C. § 1692e(2), by misrepresenting the character, amount and legal status of the Plaintiff's debt.

110.   New York Mellon and the servicing Defendants violated the FDCPA, 15 U.S.C. §§ 1692e(5)and 1692f(6), by threatening to foreclose on the Plaintiff's home even though New York Mellon has no present right to possession of the property under its security agreement, and by threatening to take other action prohibited by law.

94.   The servicing Defendants violated the FDCPA, 15 U.S.C. § 1692g(a)(1), by failing to accurately and fully state in communications to the Plaintiff "the amount of the debt."

95.    The servicing Defendants by overcharging Plaintiff's escrow account, falsely represented the amount of the debt necessary to cure the deficiency of the escrow account in violation of 15 U.S.C. § 1692e(2)(A).

96.   The servicing Defendants, falsely represented the character, amount, or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

97.   The servicing Defendants by failing to report the disputed debt as disputed to credit reporting bureaus, communicated credit information which was known or which should have been known as false in violation of 15 U.S.C. § 1692e(8).

98.   The servicing Defendants, by continuing to charge late fees and interest, and by holding Defendant's payments in a suspense account, failed to cease collection on a disputed debt in violation of 15 U.S.C. § 1692g(b).

99.   As a result of  Defendant's unlawful debt collections practices, Plaintiff has suffered and continues to suffer financial harm including but not limited to:

a.   Increased interest expenses on his mortgage;

b.   Improperly charged late fees on his mortgage;

c.   Damage to his credit report and credit score; and

d.   Attorney's fees and costs associated with attempting to correct this dispute

100.   As a result of the violations of the FDCPA, Plaintiff is entitled to (1) statutory damages; (2) actual and compensatory damages; and, (3) reasonable attorney's fees, costs, and expenses from Defendants.

WHEREFORE, Plaintiff demands judgment against the Defendants for their wrongful actions, and for all other relief as the Court deems proper.

## COUNT FIVE
## <u>VIOLATION OF § 12 C.F.R. 1024.41</u>

101.   Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten herein

102.   12 C.F.R. § 1024.41(f)(2)(i) of Regulation X provides that the Defendant, New York Mellon, cannot file or cause to be filed the first notice or filing required by applicable laws to initiate any judicial or non-judicial foreclosure if the borrower has submitted a complete loss mitigation application before a foreclosure is filed.

103.   12 C.F.R. § 1024.41(c)(2) of Regulation X provides that a servicer shall not evade the requirement to evaluate a complete loss mitigation application for all loss mitigation options available to the borrower by offering a loss mitigation option based upon an evaluation of any information provided by a borrower in connection with an incomplete loss mitigation application.

104.   12 C.F.R. § 1024.41(b) of Regulation X states that a servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.

105.   12 C.F.R. 1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that they

must promptly review the application to determine whether the application is complete and notify the borrower within five (5) days whether the application is complete.

106.   12 C.F.R. 1024.41(c) provides that upon a servicer's receipt of a loss mitigation application more than thirty-seven (37) days before a foreclosure sale, then, *within thirty (30) days*, a servicer must evaluate the borrower for all loss mitigation options available and provide written notice to the borrower stating which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage.

107.   On September 2, 2014 Plaintiffs applied for loss mitigation with Bank of America, through their written notification to Bank of America.

108.   The Application was submitted under 12 C.S.R. part 1024 Supplement 1, Comment 41(b)(1)-3.

109.   Defendant BONY, through it's servicers Bank of America and Defendant, Bank of America, failed to exercise reasonable diligence in dealing with the application and failed to promptly review the Application to determine whether it was complete and notify Plaintiff within five (5) days of receipt of the Application whether the Application was complete or incomplete.

110.   Defendant BONY, through it's servicer Bank of America and

Defendant, Bank of America, failed to state the additional documents and information Plaintiff needed to submit to make the loss mitigation application complete.

111.  Defendant BONY, through it's servicer Bank of America and Defendant, Bank of America, evaded the requirement of Regulation X, to evaluate a complete loss mitigation application for all loss mitigation options available to the Plaintiff.

112.  Defendant BONY, through it's servicer Bank of America and Defendant, Bank of America, wholly failed to evaluate Plaintiff for all loss mitigation options available and provide written notice to the borrower stating which loss mitigation options, if any, it will offer to the Plaintiff on behalf of the owner or assignee of the mortgage within thirty (30) days.

113.  Regulation X prohibits the filing of such a foreclosure proceeding applies whether the Application was filed by the Plaintiff during the first one hundred twenty (120) days that the Plaintiff was delinquent or at any time after the first one hundred twenty (120) days but before a foreclosure proceeding is filed as is provided for by 12 C.F.R. §1024.41(f)(2)(i).

114.  At the time the Plaintiff submitted their application for loss mitigation through Bank of America there was no foreclosure sale.

115.   Plaintiff alleges that pursuant to 12 C.F.R. §1024.41(f)(2)(i), such absolute prohibition applies until the servicer has denied the Application, the time to appeal the denial of the Application has expired, or Plaintiff has appealed the denial of the Application and a final decision has been made with respect to the appeal; none of the foregoing exceptions apply to the facts alleged in the instant matter.

116.   Plaintiff alleges that since Defendant BONY, through it's servicer Bank of America and Defendant, Bank of America, have not provided Plaintiff with a loss mitigation offer, or timely response otherwise, Plaintiff has not rejected an offer nor failed to comply or otherwise perform the terms of an agreement as provided for by 12 C.F.R. §1024.41(f)(2)(iii).

117.   Plaintiff alleges that Defendant BONY, through it's servicer Bank of America and Defendant, Bank of America's, conduct with regard to the September 2, 2014 application constitutes a willful violation of the applicable provisions of Regulation X.

118.   The Consumer Finance Protection Bureau ("CFPB") receives complaints from consumers regarding financial services under the terms of Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act).

119.   The CFPB maintains these complaints in a public Consumer Complaint Database at http://www.consumerfinance.gov/complaintdatabase/

120.   There are over 100 complaints against Bank of America registered in the data base in Alabama alone for "Loss mitigation, collection and foreclosure" which reveals a pattern and practice by this Defendant.

121.   As a result of this Defendants' actions, Plaintiff was caused to incur out of pocket damages, costs of copying documents, postage fees, loss of work, travel expenses, and added fees to the loan as a result of the delay in providing loss mitigation and proceeding with foreclosure, increased interest expenses on his mortgage, improperly charged late fees on his mortgage, damage to his credit report and credit score, and attorney's fees and costs associated with attempting to correct this dispute.

122.   Defendants, BONY and Bank of America are liable to Plaintiff for actual damages, statutory damages, costs, attorneys' fees, damages for emotional distress arising from the unjustified risk of losing his home, unwarranted fees and finance charges flowing from the failure to properly consider this loan for a modification, and damage to his credit rating.

123.   On December 4, 2014 Plaintiff applied for loss mitigation with NationStar, through their written notification to NationStar.

124.   The Application was submitted under 12 C.S.R. part 1024 Supplement 1, Comment 41(b)(1)-3.

125.   Defendant BONY, through it's servicer NationStar and Defendant, NationStar, again failed to exercise reasonable diligence in dealing with the application and failed to promptly review the Application to determine whether it was complete and notify Plaintiff within five (5) days of receipt of the Application whether the Application was complete or incomplete.

126.   Defendant BONY, through it's servicer NationStar and Defendant, NationStar, failed to state the additional documents and information Plaintiff needed to submit to make the loss mitigation application complete.

127.   Defendant BONY, through it's servicer NationStar and Defendant, NationStar evaded the requirement of Regulation X, to evaluate a complete loss mitigation application for all loss mitigation options available to the Plaintiff.

128.   Defendants wholly failed to evaluate Plaintiff for all loss mitigation options available and provide written notice to the borrower stating which loss mitigation options, if any, it will offer to the Plaintiff on behalf of the owner or assignee of the mortgage within thirty (30) days.

129.   Regulation X prohibits the filing of such a foreclosure proceeding applies whether the Application was filed by the Plaintiff during the first one hundred

twenty (120) days that the Plaintiff was delinquent or at any time after the first one hundred twenty (120) days but before a foreclosure proceeding is filed as is provided for by 12 C.F.R. §1024.41(f)(2)(i).

130.   At the time the Plaintiff submitted the application for loss mitigation through Nationstar there was no foreclosure sale.

131.   Plaintiff alleges that pursuant to 12 C.F.R. §1024.41(f)(2)(i), such absolute prohibition applies until the servicer has denied the Application, the time to appeal the denial of the Application has expired, or Plaintiff has appealed the denial of the Application and a final decision has been made with respect to the appeal; none of the foregoing exceptions apply to the facts alleged in the instant matter.

132.   Plaintiff alleges that since Defendant BONY, through it's servicer NationStar and Defendant, NationStar have not provided Plaintiff with a loss mitigation offer, or response otherwise, Plaintiff has not rejected an offer nor failed to comply or otherwise perform the terms of an agreement as provided for by 12 C.F.R. §1024.41(f)(2)(iii).

133.   Plaintiff alleges that Defendant BONY, through it's servicer NationStar and Defendant, NationStar's conduct with regard to the previous application and the December 4, 2014 application constitutes a willful violation of the applicable provisions of Regulation X.

134.   There are over 20 complaints against Nationstar registered in the CFPB Consumer Complaint data base in Alabama alone for "Loss mitigation, collection and foreclosure" which reveals a pattern and practice by this Defendant.

http://www.consumerfinance.gov/complaintdatabase/

135.   As a result of this Defendants' actions, Plaintiff was caused to incur out of pocket damages, costs of copying documents, postage fees, loss of work, travel expenses, and added fees to the loan as a result of the delay in providing loss mitigation and proceeding with foreclosure, increased interest expenses on his mortgage, improperly charged late fees on his mortgage, damage to his credit report and credit score, and attorney's fees and costs associated with attempting to correct this dispute.

136.   Defendants, BONY and NationStar are liable to Plaintiff for actual damages, statutory damages, costs, attorneys' fees, damages for emotional distress arising from the unjustified risk of losing his home, unwarranted fees and finance charges flowing from the failure to properly consider this loan for a modification, and damage to his credit rating.

## COUNT SIX
## VIOLATION OF 12 C.F.R. 1024.35

137.   Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully

rewritten herein.

138.   On August 29, 2014 three letters were sent to Bank of America notifying them of the errors regarding the servicing of the Plaintiff's loan with regard to the escrow, arrearage, and misapplication of payments received in the Plaintiff's Chapter 13 and Wife's Chapter 13.

139.   One letter specifically advised Bank of America there was an error in the account as a result of the application of payments following the Plaintiff's Bankruptcy. The letter provided the following notification of error:

> Lorenzo Bennett filed a Chapter 13 with the United States Bankruptcy Court for the Southern District of Alabama; Case No.:. 08-14471. The proof of claim from Country Wide Home Loans Servicing, L.P. totaled $3,526.64 for arrearage for 09/2008, 10/2008 and 11/2008. The bankruptcy trustee made payments to you to pay the arrearage for these months.

> You did not freeze those months and wait for your arrearage payments from the trustee. Instead, when we made a regular payment you took those and applied them to the arrearage included in Lorenzo's bankruptcy instead of applying them to the post-petition payments received directly from us only to post-petition amounts owed.

> This has caused a huge accounting error in our account. We believe that this has happened because you have failed to follow the provisions of Lorenzo's Confirmed Chapter 13 Plan and apply all post-petition payments received from the Chapter 13 Trustee to the pre-petition arrearage claim beginning with the calendar month and year designated for payment by the Court in the Order Confirming Plan; and failed to properly credit all payments tendered by us as of the date of receipt to the post-petition payments. We believe this failure has resulted in some type of additional or collateral charge or advance for a fee or to the furnishing of negative information to a consumer credit reporting

agency.

140.   The second letter specifically advised Bank of America there was an

error in the account as a result of the application of payments following the Mrs.

Bennett's Bankruptcy. The letter provided the following notification of error:

> Angela Bennett filed a Chapter 13 of Angela Bennett. In the United States
> Bankruptcy Court for the Southern District of Alabama; Case No.: 09-13018.
> The proof of claim from July 12, 2010 BAC Home Loan Servicing, L.P.
> totaled $9,382.37 for arrearage for 10/2008 - 07/2009. The bankruptcy trustee
> made payments to you to pay the arrearage for these months. This claim
> overlapped with the proof of claim filed by Country Wide Home Loans
> Servicing, L.P. in Lorenzo's Chapter 13 bankruptcy in United States
> Bankruptcy Court for the Southern District of Alabama; Case No.:. 08-14471,
> which included 10/2008 and 11/2008 arrearage on this same loan. Lorenzo's
> bankruptcy trustee made payments to you to pay the arrearage for these same
> months. Based on the payment history of our loan dated 06/20/2011 that you
> provided to us you have been paid by the bankruptcy trustees in both of our
> bankruptcies for arrearage in the months of 10/2008 and 11/2008.
>
> This has caused a huge accounting error in our account. We believe that this
> has happened because you have failed to follow the provisions of both of our
> Confirmed Chapter 13 Plan and apply all post-petition payments received from
> the Chapter 13 Trustee to the pre-petition arrearage claim beginning with the
> calendar month and year designated for payment by the Court in the Order
> Confirming Plan; and failed to properly credit all payments tendered by us as
> of the date of receipt to the post-petition payments. We believe this failure has
> resulted in some type of additional or collateral charge or advance for a fee or
> to the furnishing of negative information to a consumer credit reporting
> agency.

141.   The third letter advised Bank of America of an error regarding the

escrow and asked for information, as follows:

On July 12, 2010 BAC Home Loan Servicing, L.P. filed a proof of claim with the bankruptcy court in the Chapter 13 of Angela Bennett. In the United States Bankruptcy Court for the Southern District of Alabama; Case No.: 09-13018. That claim shows our escrow shortage was $2,050.05.

Your payment history of our loan dated 06/20/2011 that you provided to us shows that we had an escrow shortage of $4,296.44 before the bankruptcy and that there remained an escrow shortage of $4,296.44 as of July 27, 2010. The 06/19/2014 payment history you provided starts with this same escrow shortage of $4,296.44.

Why did you fail to credit our account to reflect the escrow shortage of $2,050.05 that BAC Home Loan Servicing, L.P. swore to the court as the correct amount? If you had credited the account then as of October 15, 2010, we would have had a positive escrow balance in our account.

We believe that this has happened because you have failed to properly credit all payments tendered by us as of the date of receipt. We believe this failure has resulted in some type of additional or collateral charge or advance for a fee or to the furnishing of negative information to a consumer credit reporting agency.

142.    Defendant, Bank of America, received delivery of all three notice of errors.

143.    12 C.F.R. 1024.35(e)(3)(B) provides that a servicer must respond to a notice of error made pursuant to 12 C.F.R. 1024.35(b)(9) prior to the date of a foreclosure sale or within thirty (30) days of receipt of such a notice of error.

144.    12 C.F.R. 1024.35(e)(3)(C) provides that that a servicer must respond to a notice of error made pursuant to 12 C.F.R. 1024.35(b), other than pursuant to 12 C.F.R. 1024.35(b)(6), (9), and (10), within thirty (30) days of receipt of such a notice

of error.

145.   Defendant BONY, through it's servicer Bank of America and Defendant, Bank of America wholly failed to acknowledge receipt of and respond to either of the notice of errors within thirty (30) days in violation of 12 C.F.R. 1024.35.

146.   Further, 12 CFR 1024.36(c) of Regulation X, provides the servicer must respond to a request for information within five (5) days (excluding legal public holidays, Saturdays and Sundays) acknowledging receipt of this information request.

147.   12 CFR 1024.36(d)(ii)(2)(A) of Regulation X, provides the servicer must respond not later than thirty (30) days (excluding legal public holidays, Saturdays and Sundays) after receipt of the request for information.

148.   Defendant Bank of America failed to properly acknowledge receipt of and respond to the request for information.

149.   Plaintiff alleges that the conduct of   Defendant BONY, through it's servicer Bank of America and Bank of America with regard to the notices of errors and requests for information dated August 29, 2014 constitutes a willful violation of the applicable provisions of Regulation X.

150.   As a result of Defendant BONY, through it's servicer Bank of America and Bank of America's actions, Plaintiff suffered damages including mental anguish, anxiety, worry, loss of happiness, economic damages, and out of pocket damages,

costs of copying documents, postage fees, loss of work, travel expenses, legal expenses and costs, and added fees to an inflated loan amount as a result of the failure to correct the accounting and fees related to foreclosure, charging and collecting extraneous fees not agreed to by the parties, and its actions in improperly declaring defaults and pursing a wrongful foreclosure of the Plaintiff's home.

151.   Defendant BONY, through it's servicer Bank of America and Defendant Bank of America are liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

### DECLARATORY AND INJUNCTIVE RELIEF

152.   Plaintiff realleges all prior paragraphs as if set out here in full.

153.   On information and belief, Defendant BONY does not have the right to act pursuant to the power of sale, because it is not an assignee of the mortgage.

154.   On information and belief, the Legal Notice provided to Plaintiff is not valid because at the time it was sent, BONY had no power to act on the mortgage under Alabama law.

155.   BONY cannot conduct a valid sale of the residence under Alabama law.

156.   Neither BONY, nor any party acting on its behalf, sent the notice required to the Plaintiff as a condition precedent to foreclosure.

157.   Absent the required notice, BONY cannot enforce the power of sale.

158.   BONY's foreclosure, if allowed to proceed, would cause Plaintiff irreparable harm.

159.   The balance of hardships tips decidedly in favor of Plaintiff, because absent injunctive relief, he will lose his home of 8 years, and may lose accumulated equity and/or the right to raise claims and defenses to enforcement of the mortgage as set forth hereunder.

160.   Preliminary and permanent injunctive relief is consistent with the public interest, because it will prevent a wrongful foreclosure and because it effectuates the purposes of recently enacted statutory law.

161.   As set out more fully herein, there exists a dispute as to the obligations of the Defendant, BONY and the current servicer Defendant, NationStar, to the Plaintiff with regard to default loan servicing and loss mitigation assistance and over whether Defendants have acted in good faith and in timely manner with regard to their default loan servicing and loss mitigation assistance which the Plaintiff is entitled to receive and which the Defendants are obligated to provide.

162.   Plaintiff is entitled to injunctive relief, a declaratory judgment and a determination as to whether the Defendant, BONY and the current servicer Defendant, NationStar have complied with their duties to the Plaintiff with regard to loss mitigation and Plaintiff is similarly entitled to an order enjoining any foreclosure

proceedings unless and until the Defendants fully have complied with their loss

mitigation obligations.

> /s/ Rhonda Steadman Hood
> Rhonda Steadman Hood
> HOOD & LAY, LLC
> 1117 22nd Street S, Ste. 101
> Birmingham, AL 35205
> (205) 323-4123
> Fax:    (205) 776-2040
> Rhonda@whlfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing on the undersigned counsel, via electronic filing or where necessary USPS postage prepaid, this the 5th Day of May, 2015

G. Lane Knight, Esq.
Gregory Cook, Esq.
Balch & Bingham, LLP
PO Box 306
Birmingham, AL 35201

Brian A. Wahl, Esq.
Colin T. Dean, Esq.
Bradley, Arant, Boult Cummings, LLP
One Federal Place 1819 Fifth Avenue North
Birmingham, AL 35203

> /s/ Rhonda Steadman Hood
> OF COUNSEL