## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

LORENZO BENNETT, SR.,                )
                                     )
     Plaintiff,                    )
                                     )
v.                                   )     CA 15-00165-KD-C
                                     )
NATIONSTAR MORTGAGE, LLC, *et*       )
*al*.                                )
                                     )
     Defendants.                   )

## REPORT AND RECOMMENDATION

Pending before the Court is the "Motion to Dismiss Claims Against Nationstar Mortgage, LLC and Bank of New York Mellon" and supporting brief (Docs. 18, 19) brought under Federal Rule of Civil Procedure 12(b)(6) by Defendants Nationstar Mortgage, LLC ("Nationstar") and Bank of New York Mellon (f/k/a The Bank of New York), as Trustee for the Certificate Holders of CWMBS Reperforming Loan Remic Trust Certificates, Series 2005-R1 ("BONYM") (together, "Defendants").[1]

The Plaintiff, Lorenzo Bennett, Sr. ("Bennett"), has timely filed a response in opposition (Doc. 28) to the motion, and the Defendants have timely filed a reply (Doc. 29) to the response. The motion is now under submission and is ripe for

---

[1] Defendant Bank of America, N.A. d/b/a BAC Home Loan Servicing, LP ("BOA") is not a party to this motion.

adjudication. (*See* Doc. 24). The present motion has been referred to the undersigned for entry of a report and recommendation under 18 U.S.C. § 636(b)(1)(B)-(C) and Federal Rule of Civil Procedure 72(b)(1). Upon consideration of the parties' briefs and oral arguments, the undersigned **RECOMMENDS** that the Defendants' "Motion to Dismiss Claims Against Nationstar Mortgage, LLC and Bank of New York Mellon" (Doc. 18) be **GRANTED in part** and **DENIED in part**, as set forth herein.[2]

## I.    *Applicable Legal Standards*

Defendants' Motion asserts that portions of the Amended Complaint fail to state claims upon which relief can be granted, and therefore is properly analyzed under Rule 12(b)(6), Fed.R.Civ.P. To withstand Rule 12(b)(6) scrutiny and comply with the minimum pleading requirements of Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[ ][its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

---

[2] After briefing and oral argument, Plaintiff filed a pleading captioned as "PLAINTIFF'S SUPPLEMENT FILING IN OPPOSITION TO PENDING MOTION TO DISMISS AND MOTION FOR LEAVE TO FURTHER AMEND COMPLAINT," (Doc. 33). Defendants filed a response to this pleading on August 6, 2015 (Doc. 34). After a review of both, the undersigned finds that the supplemental authority does not change the undersigned's position as to the recommendations made herein and the motion for leave to amend is premature and procedurally deficient. S.D. Ala. Civil L.R. 15 (August 1, 2015). Therefore, Plaintiff's motion is **DENIED**.

556 U.S. 662, 678 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[ ] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "To survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, . . . but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

For purposes of this Rule 12(b)(6) analysis, the Court accepts as true all well-pleaded factual allegations of the Amended Complaint, and draws all reasonable inferences in Bennett's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of

the complaint"). Notwithstanding this deference to Bennett's pleading at the Rule 12(b)(6) stage, it is also true that "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

In addition, "even where a Rule 12(e) motion for a more definite statement of claims is not filed, the Eleventh Circuit has suggested that a district court should order repleading *sua sponte* when faced with a 'shotgun' pleading." *E.g.*, *Betts v. Conecuh County Bd. of Educ.*, No. 14-0356-CG-N, 2014 WL 7411670, *12 n.9 (S.D. Ala. Dec. 30, 2014) (citing *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) ("In light of defense counsel's failure to request a repleader, 'the court, acting sua sponte, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement.'" (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla.*, 77 F.3d 364, 367 n.5 (11th Cir. 1996))); *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014) (same); *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009) ("When presented with a shotgun complaint, the district court should order repleading *sua sponte*." (citing *Wagner v. First Forizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006))).

## II.   *Background*

Bennett initiated this action on February 18, 2015, by filing a complaint in the Circuit Court of Mobile County, Alabama. Defendants timely removed the case to this Court on March 26, 2015. (Doc. 1). Bennett filed an Amended Complaint on May 5, 2015. (Doc. 10).

Bennett alleges claims against Defendants Nationstar, BONYM, and BOA. (*See* Doc. 10). The following well-pleaded factual allegations in the Amended Complaint are accepted as true for purposes of the present motion:

> Bennett obtained a mortgage loan in October 1997 from Southtrust Mortgage Corporation, secured by a mortgage on Bennett's house in Mobile, Alabama. (Doc. 10, ¶¶ 1, 10).[3] Bennett's mortgage contains a VA Guaranteed Loan and Assumption Policy Rider ("VA Rider"). (Doc. 10, ¶ 57; Doc. 19-1, at 7-8). Servicing of Bennett's loan was subsequently transferred to Countrywide Home Loan Servicing, LP ("Countrywide"), then to BOA, and then to Nationstar. (Doc. 10, ¶¶ 12-14).
>
> In 2008, Bennett became unable to make his mortgage payments and filed for Chapter 13 bankruptcy. (Doc. 10, ¶¶ 17-18). Bennett was still unable to bring the loan current, and in 2009, Bennett's wife, Angela Bennett, also filed Chapter 13 bankruptcy. (*Id.* ¶ 21). On or about July 12, 2010, BOA filed a proof of claim in Mrs. Bennett's

---

[3] Defendants attached to their brief in support of their motion to dismiss (Doc. 19) a copy of Bennett's mortgage (Doc. 19-1). "Even documents submitted by a defendant with a motion to dismiss, rather than by the plaintiff with the complaint, may be considered by the court if 'the plaintiff refers to [those] documents in the complaint and those documents are central to the plaintiff's claim.'" *Gross v. White*, 340 Fed. App'x. 527, 533 (11th Cir. 2009) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)). While not attached to the Amended Complaint, the mortgage is referred to throughout the Amended Complaint, the mortgage is central to Bennett's claims (most obviously to Bennett's claims for breach of contract and breach of contractual obligations of good faith and fair dealing), and the authenticity of the mortgage document attached to Defendants' brief is not in dispute. Accordingly, the undersigned considers Bennett's mortgage (Doc. 19-1) without converting this Rule 12(b)(6) motion into a motion for summary judgment. *See* Fed.R.Civ.P. 12(d).

bankruptcy for $9,382.37 of arrearage on the loan for October 2008 through July 2009. (*Id.* ¶ 22). BOA's proof of claim overlapped with a proof of claim filed in Bennett's Chapter 13 bankruptcy by Countrywide, which included arrearage for the same loan from October 2008 and November 2008. (*Id.* ¶ 24). Trustees for each bankruptcy paid the same arrearage for these overlapping months, but "the account was never properly credited causing a continued error in the accounting." (*Id.* ¶ 26).

On August 29, 2014, Bennett wrote BOA giving notice of alleged servicing errors relating to escrow, arrearage, and application of payments. (Doc. 10, ¶ 40). On September 2, 2014, Bennett wrote to BOA requesting loss mitigation in an effort to avoid foreclosure following his continued inability to make his mortgage payments. (*Id.* ¶¶ 37-38). BOA did not act on Bennett's August 29, 2014 and September 2, 2014 letters before transferring the servicing of Bennett's loan account to Nationstar. (*Id.* ¶ 42).

In the months that followed, Nationstar sent Bennett a series of account statements and delinquency notifications before Bennett wrote to Nationstar to dispute the debt and advise Nationstar of alleged errors on the account. (*Id.* ¶¶ 43-50). On December 4, 2014, Bennett wrote to Nationstar requesting loss mitigation in an effort to avoid foreclosure, but Nationstar "pushed forward" with a foreclosure sale set for February 19, 2015 and did not timely act on Bennett's loss mitigation request. (*Id.* ¶¶ 50-52). Bennett filed his state court complaint on February 18, 2015, stopping foreclosure proceedings. (*See* Doc. 28, at 30; *see generally* Doc. 1-1).

Based on the preceding factual allegations, Bennett asserts the following causes of action against the Defendants:

- Count 1- negligence/wantonness. (*See* Doc. 10 at 15-18).

- Count 2- breach of contractual obligations of good faith and fair dealing (*See id.* at 18- 19).

- Count 3- breach of contract. (*See id.* at 19-21).

- Count 4- violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (*See id.* at 21-24).

6

- Count 5- violations of 12 C.F.R. § 1024.41. (*See id.* at 25-32).

- Count 6- violations of 12 C.F.R. § 1024.35 (asserted against BOA and BONYM only) (*See id.* at 32-37).

- Declaratory and injunctive relief (*See id.* at 37-39).

### III.   *Analysis*

In subsection A., *infra*, the undersigned will determine those claims that, regardless of whether they have been sufficiently plead, can be dismissed as a matter of law, as this will narrow the scope of claims that will require a more definite statement, as set forth in subsection B., *infra*.  The undersigned addresses Bennett's claims for declaratory and injunctive relief in subsection C., *infra*.

### A. Rule 12(b)(6) Dismissal

#### 1. Negligence/Wantonness (Count One)

In Count One of the Amended Complaint, Bennett pleads state-law claims of negligence and/or wantonness against both Defendants. Bennett claims that Nationstar, individually, and BONYM, vicariously liable through its servicers BOA and Nationstar, "acted negligently and/or wantonly with regard to servicing and loss mitigation assistance which they were obligated to provide." (Doc. 10, ¶ 86; Doc. 28, at 13).  Bennett identifies three general categories of allegedly negligent and/or wanton behavior: (1) violations of a purported duty imposed by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq*., by failing to adequately respond to Bennett's loss mitigation requests; (2)

violations of a purported duty imposed by "VA regulations and guidelines"[4] to consider Bennett for loan modification or forbearance; and (3) various errors relating to the servicing of Bennett's mortgage account, including providing Bennett with an inaccurate accounting of amounts due,[5] failing to maintain proper and adequate loan records, attempting to collect sums not owed, causing forced place property insurance to be obtained, treating Bennett's loan as in default and accelerating the debt, disseminating and/or not correcting false credit information,

---

[4] Bennett cites various regulations and guidelines associated with the Department of Veterans Affairs' Home Loan Program, through which the VA Rider attached to Bennett's mortgage was issued, that Bennett contends are applicable to his claims. *See* Doc. 10, ¶ 55-59 (Bennett specifically cites 38 U.S.C. §§ 3703(a)(1)(A), -(2)(B), and –(c)(1), 38 C.F.R. § 36.4300 to -4393, and VA Handbook H26-94-1).

[5] Bennett alludes to a claim of "negligent misrepresentation" within his negligence claim, based on the Defendants' purported failure to provide "truthful and accurate information about the status of [Bennett's] loan account." (Doc. 10, ¶ 85; Doc. 28, at 14). The undersigned does not read the Amended Complaint to assert a separate claim for "negligent misrepresentation," and the Defendants do not directly address this as a separate cause of action, but upon review of the Amended Complaint, the undersigned finds that a negligent misrepresentation claim, to the extent it is asserted as separate cause of action, is not supported by sufficient factual allegations. Alabama law does recognize a negligent misrepresentation cause of action, which is separate from a negligence claim. *See Lawson v. Harris Culinary Ent., LLC*, 83 So. 3d 483, 492 (Ala. 2011) ("'[L]egal fraud' includes misrepresentations of material fact made 'by mistake or innocently' as well as misrepresentations made 'willfully to deceive, or recklessly without knowledge.'") (citations omitted). However, "[t]o establish a cause of action for fraudulent misrepresentation, the plaintiff must show 1) that the defendant made a misrepresentation; 2) that that misrepresentation concerned a material existing fact; 3) *that the plaintiff relied on the misrepresentation*; and 4) *that the reliance was to the plaintiff's detriment*." *Id.* (emphasis added) (citations omitted). Bennett fails to allege in the Amended Complaint (Doc. 10), or identify in his response (Doc. 28), any facts to support the latter two elements of this cause of action. Indeed, Bennett claims to have disputed the debts asserted by BOA and Nationstar, so it is unclear from the Amended Complaint how he "relied" on allegedly inflated demands for amounts due or was injured by such reliance. (*See* Doc. 10, ¶¶ 40-50). Accordingly, to the extent Bennett attempts to state a negligent misrepresentation claim separate and apart from his negligence claim, his negligence misrepresentation claim is due to be **DISMISSED**.

and not properly training and/or supervising employees on the investigation and handling of disputed accounts.  (Doc. 28, at 12-17; Doc. 10, ¶¶ 77-85).

The Defendants argue that Bennett's negligence and wantonness claims are due to be dismissed because Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.  (Doc. 19, at 5-9; Doc. 29, at 2-5).  The Defendants rely on a strong line of cases that this Court recently described as "a veritable avalanche of recent (and apparently unanimous) federal precedent [] that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law." *James v. Nationstar Mortg., LLC*, 2015 U.S. Dist. LEXIS 28762, *22–23, (S.D. Ala. Mar. 9, 2015) (citations omitted) (collecting cases at *23-26 n.8); *see also Deutsche Bank Trust Co. Ams. v. Garst*, 989 F. Supp. 2d 1194, 1205 (N.D. Ala. 2013) (discussing "the emerging consensus that 'Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.'" (citing *Prickett v. BAC Home Loans & Bank of Am., N.A.*, 946 F. Supp. 2d 1236, 1245 (N.D. Ala. 2013) (collecting cases)); *Selman v. CitiMortgage, Inc.*, 2013 U.S. Dist. LEXIS 37017, at *17–22 (S.D. Ala. March 5, 2013) (collecting cases; holding that negligent and wanton mortgage servicing claims in

9

Alabama fail as a matter of law);  *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1290 (N.D. Ala. 2013) (same).[6]

The undersigned agrees with this vast consensus and the summation of the issue as expressed in *James*:

> The point is simple. Every single one of these cases (and many others not cited herein) rejects the availability of negligence and wantonness claims under Alabama law under comparable circumstances to those identified by the Jameses. . . . Suffice it to say that the Court agrees with these decisions' construction of Alabama law, and particularly their recognition that *the mortgage servicing obligations at issue here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public*.

*James*, 2015 U.S. Dist. LEXIS 28762, *26-27 (emphasis added) (dismissing wantonness and negligence claims against servicer and mortgagee for failure to state claims upon which relief could be granted) (internal citations and quotations omitted).  The rights and obligations relating to Bennett's mortgage account sound in contract, not tort, and the negligence/wantonness claims against the Defendants

---

[6] *See also Ott v. Quicken Loans, Inc.*, 2015 WL 248938, *5 (M.D. Ala. Jan. 20, 2015) ("Alabama law recognizes no such form of action in this context. Specifically, there is an emerging consensus that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.") (citations and internal quotation marks omitted); *Branch Banking and Trust Co. v. EBR Investments LLC*, 2015 WL 225457, *3 (N.D. Ala. Jan. 16, 2015) ("Numerous federal courts, including the undersigned, have concluded that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.") (citations and internal quotation marks omitted); *Alverson v. PNC Bank*, 2014 WL 7146995, *3 (S.D. Ala. Dec. 15, 2014) ("Alabama law does not recognize a tort-like cause of action for breach of a duty created by contract, at least not between the parties to a contract; therefore, a mortgagor cannot maintain a cause of action against . . . a mortgagee for negligent or wanton servicing of a mortgage contract.").

cannot stand.  *See Buckentin,* 928 F. Supp. 2d at 1290; *Prickett*, 946 F. Supp. 2d at 1245 ("[T]here is no duty to the general public to properly service mortgage accounts."); *Shedd v. Wells Fargo Home Mortg., Inc*., 2014 U.S. Dist. LEXIS 160996, *15 (S.D. Ala. Nov. 17, 2014) ("Wantonness (like negligence) is not an alternative theory of recovery for breach of contract between two contracting parties.") (citing *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) (dismissing negligence and wantonness claims because "Alabama does not recognize a tort-like cause of action for breach of a duty created by contract")).

Bennett does not address this "emerging consensus," *Ott*, 2015 WL 248938, at*5, but attempts to circumvent the bar against negligent and/or wanton mortgage servicing claims in at least two ways.

First, Bennett argues that "Defendants ignore Bennett's alleged dealings with the Defendants that are separate and apart from the contract," and cites "the Defendant's decision to proceed with foreclos[ure] on the property despite Bennett's dispute" as an example of something supposedly "separate and apart from the contract." (Doc. 28, at 16).  However, Bennett clearly seeks to base at least part of his negligence and/or wantonness claims on conduct that is governed by the note and mortgage and therefore is not "separate and apart from the contract."  For example, Nationstar's obligations with respect to stating amounts due, collecting money from Bennett, accelerating Bennett's debt, initiating

foreclosure proceedings, maintaining loan records, and causing forced place property insurance to be obtained are obligations upon which Bennett seeks to state a negligence and/or wantonness claim, but are governed by his mortgage and note. (Doc. 28, at 14, 16; Doc. 19-1, at ¶¶ 1, 11, and generally). Moreover, to the extent that Bennett alleges that Nationstar's obligations with respect to loss mitigation are governed by "VA regulations and guidelines," those regulations and guidelines are purportedly identified and incorporated directly into the mortgage itself, and do not create an extra-contractual "duty." (*See* Doc. 10, ¶ 57; doc. 19-1, at 1, 7).

Bennett's next argument is that Nationstar violated a statutory "duty" purportedly imposed on mortgage servicers by RESPA and/or VA regulations and guidelines regarding loss mitigation (Doc. 10, ¶¶ 77-83; Doc. 28, at 14-16). Thus, Bennett appears to argue that statutes, regulations, or guidelines, rather than contracts, form the basis for the duties that he claims were breached. (*See* Doc. 28, at 13 ("Bennett alleges federal law and regulations impose a duty of affirmative care on the servicing Defendants Bank of American and Nationstar.")). The court in *James* rejected an attempt by a borrower to advance a similar negligence *per se*[7]

---

[7] "There is no Alabama tort cause of action known as negligence per se. Rather, negligence per se is merely a subsidiary doctrine of negligence whereby a party is considered negligent as a matter of law because it acted in violation of a statute which was designed to prevent the type of harm that occurred." *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1233 (N.D. Ala. 2013) (citing *Parker Bldg. Servs. Co. v. Lightsey*, 925 So. 2d 927, 930-31 (Ala. 2005)).

theory by relying on RESPA to create an extra-contractual "duty" owed by a servicer:

> [F]ederal courts in Alabama have given short shrift to similar efforts invoking the doctrine of negligence *per se* to outflank the phalanx of case authorities holding that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing. . . . The statutes in play in this case regulate the contractual relationship between the [borrower and the servicer or lender], but do not eliminate or supplant that contractual relationship; therefore, the reasoning of the line of authorities beginning with *Blake* (*i.e.*, that the obligations in question are rooted in contract rather than tort) remains fully intact, even in the face of a negligence *per se* claim.").

*See James*, 2015 U.S. Dist. LEXIS 28762, at *27-29 n.9 (citing *Costine*, 946 F. Supp. 2d at 1233-34 ("the duties and breaches alleged by [borrowers against servicer] clearly would not exist but for the contractual relationship between the parties.") (further internal citations omitted).   The undersigned agrees with the rationale in *James* and finds that Bennett's attempts to create tort liability based on extra-contractual duties purportedly imposed by RESPA and/or VA regulations and guidelines must fail in light of the authority discussed above.

In addition, even if his claim for negligent mortgage servicing could stand,[8] Bennett fails to allege any facts to support his claim for *wantonness*.  Bennett states

---

[8] Bennett has also "failed to state a negligence claim against either Defendant because there can be no recovery for negligence under Alabama law absent physical injury, an immediate risk of physical injury, or property damage."  *Shedd v. Wells Fargo Home Mortg., Inc.*, 2014 U.S. Dist. LEXIS 160996, *14-15 (S.D. Ala. Nov. 17, 2014) (citing *Wallace v. Suntrust Mortg., Inc.*, 974 F. Supp. 2d 1358, 1369-70 (S.D. Ala. 2013) (and cases cited therein)). "Physical injury, as defined by Black's Law Dictionary is 'physical damage to a person's body.'" *Id.* (citing BLACK'S LAW DICTIONARY p. 906 (10th ed. 2009)). Just as "Plaintiffs' allegations of 'physical

in his response only that "his wantonness claims are also supported by [his] allegations," then quotes a case setting forth the elements of a wantonness claim under Alabama law. (Doc. 28, at 16-17 (quoting *Lindsey v. NCO Financial Systems, Inc.*, 2012 U.S. Dist. LEXIS 129866) (N.D. Ala. 2012)).   There are no factual allegations in the Amended Complaint to show that the Defendants "with reckless indifference to the consequences [] consciously and intentionally did some wrongful act or omitted some known duty." *Lindsey*, 2012 LEXIS 129866, *16 (citing *Roberts v. Brown*, 384 So. 2d 1047, 1048 (Ala. 1980)); *see also See Ex Parte Capstone Bldg Corp.*, 96 So. 3d 77, 85 (Ala. 2012) ("[w]antonness is not merely a higher degree of culpability than negligence").

Finally, Bennett appears to make subclaims within Count One that the Defendants negligently/wantonly trained or supervised their employees.  (Doc. 10, ¶ 85).  To succeed on a negligent or wanton hiring, training, or supervision claim, a plaintiff must prove that "(1) the employee committed a tort recognized under Alabama law; (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence; and (3) the employer failed to respond to this notice adequately." *Lawrence v. Christian Mission Center Inc. of Enterprise*, 780 F. Supp. 2d 1209, 1218 (M.D. Ala. 2011); *see also Costine*

---

distress' and 'physical discomfort' [were] insufficient" in *Shedd*, Bennett's allegation of "physical illness" is likewise insufficient.  (*See* Doc. 10, ¶ 87); *Shedd*, 2014 U.S. Dist. LEXIS 160996, *14-15.

*v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1234-35 (N.D. Ala. 2013) (same); *Crutcher v. Vickers*, 2012 WL 3860557, *13 (N.D. Ala. Sept. 5, 2012) (explaining that a critical element of either negligent supervision or negligent training under Alabama law is "proof of the employer's actual or constructive awareness of the employee's incompetency").

Because negligent or wanton mortgage servicing is not a recognized tort under Alabama law, Bennett's purported negligent/wanton training and supervision subclaims fail for lack of an underlying state law tort.[9]  These subclaims also fail because the Amended Complaint does not allege facts that would support the elements of employer notice or failure to respond. *See James*, 2015 U.S. Dist. LEXIS 28762 at *29–30 (dismissing negligence and wantonness claims against servicer, including claims of negligent/wanton hiring, training, or supervision) (quotation and citations omitted); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (*Twombly / Iqbal* pleading standard "necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim").

Based on the foregoing authority, the undersigned finds that Bennett's negligence and wantonness claims against the Defendants, including Bennett's

---

[9]  *See Garst*, 989 F. Supp. 2d at 1205 (dismissing negligent and wanton hiring, supervision, and training claims because negligent or wanton mortgage servicing is not a recognized tort under Alabama law); *Barnett v. JP Morgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 89398, *32 n.16 (N.D. Ala. June 26, 2013) (same).

claims for negligent misrepresentation and negligent/wanton training and/or supervision, are due to be **DISMISSED**.  Thus, the Defendants' motion to dismiss (Doc. 18) is due to be **GRANTED** as to the claims against Nationstar and BONYM in Count One of the Amended Complaint (Doc. 10).

## 2. Breach of Contractual Obligations of Good Faith and Fair Dealing (Count Two)

Bennett alleges in Count Two of the Amended Complaint that Nationstar, individually, and BONYM, through its servicers BOA and Nationstar, breached an implied covenant of good faith and fair dealing, namely, "a duty not to do anything which would deprive [Bennett] of the benefit of [the note and mortgage], and [] a duty to do everything that the [note and mortgage] presupposed each of the parties would do to accomplish the purpose or purposes of the [note and mortgage]." (Doc. 10, ¶¶ 90–91).  The Amended Complaint does not identify any specific factual allegations to support this claim, merely adopting by reference all preceding paragraphs in the Amended Complaint.  (*See id.*, ¶¶ 89-91).

The Defendants argue first that Bennett fails to state a claim for breach of contractual obligations of good faith and fair dealing because the claim is not tied to a specific contractual provision. (Doc. 19, at 9-11).  "Every contract carries an implied obligation of good faith and fair dealing . . .  However, it is clear that the obligation is not actionable unless the breach of that duty can be tied to the performance of a specific term of the contract."  *Shedd*, 2014 U.S. Dist. LEXIS

160996 at *8–9 (emphasis added) (citing *Lake Martin/Alabama Power Licensee Assoc. v. Alabama Power Co., Inc.*, 601 So. 2d 942, 945 (Ala. 1992)).

The Defendants are correct that Count Two of the Amended Complaint is silent as to the "specific term" of the mortgage to which Bennett seeks to tie his claim. (*See* Doc. 10, ¶¶ 89-92). Nonetheless, Bennett responds that his Amended Complaint sets forth the provisions of the VA Rider contained in the mortgage, and that is the "specific provision" to which Bennett's claim is tied. (Doc. 28, at 19 (citing Doc. 10, ¶ 57)).

The Defendants reply that even if the Court finds that the claim is tied to a specific contractual provision, *i.e.*, the VA Rider, the claim still fails because the mortgage specifies the rights and obligations of the parties. (Doc. 29, at 5-6). "Alabama courts have recognized the duty of good faith and fair dealing *when 'the contract fails to specify all the duties and obligations intended to be assumed.'*" *Shedd*, 2014 U.S. Dist. LEXIS 160996 at *8–9 (citing *Lloyd Noland Found.*, 837 So. 2d at 267) (emphasis added). "In those instances, 'the law will imply an agreement to do those things that according to reason and justice the parties should do in order to carry out the purpose for which the contract was made.'" *Id.* (citing *Lloyd Noland Found.*, 837 So. 2d at 267).

The undersigned agrees with the Defendants. Even assuming that the VA Rider was properly incorporated by reference into Count Two as a "specific term"

of the mortgage, Bennett's claim still fails because the VA Rider states that Title 38 of the U.S. Code "and Regulations issued thereunder and in effect on the date hereof shall govern the *rights, duties, and liabilities* of Borrower and Lender." (Doc. 19-1, at 7) (emphasis added). Because the VA Rider is alleged to have been incorporated into the mortgage itself, any alleged breach of the provisions of Title 38 or regulations issued thereunder with respect to loss mitigation would be a breach of the mortgage, "not a violation of the duty of good faith and fair dealing." *See Shedd*, 2014 U.S. Dist. LEXIS 160996 at *11 ("failure to properly apply payments would be a violation of a specific contractual term, not a violation of the duty of good faith and fair dealing").

Further, even if the duties and obligations assumed by the Defendants were not specifically identified in the mortgage, the undersigned would still recommend dismissing this claim. Bennett does not support his claim with factual allegations showing what the Defendants actually did to purportedly violate an implied obligation of good faith and fair dealing. The Amended Complaint alleges a plethora of vague allegations that could possibly be intended to support Bennett's claim for a breach of the implied covenant of good faith and fair dealing, *e.g.*, the Defendants "failed to provide [Bennett] with a good faith opportunity to work out the loan and further to avoid foreclosure" (Doc. 10, ¶ 53), failed to provide "reasonable forbearance opportunities" and "good faith consideration of temporary

18

suspension of payment and extension of the loan," (*Id.* ¶ 58), failed to provide an "opportunity to access and obtain in good faith mortgage servicing options designed to avoid foreclosure of this VA mortgage" (*Id.* ¶ 60), "refused to engage in a legitimate and good faith mortgage foreclosure workout" (*Id.* ¶ 67), and did not offer "the required pre-foreclosure counseling and loss mitigation efforts." (Doc. 28, at 10).  This boilerplate rhetoric does not adequately state how the Defendant's actions (or inactions) were not in "good faith," "reasonable," or "legitimate."[10] The undersigned finds that these vague, conclusory allegations do not provide "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).

Based on the foregoing authority, the undersigned finds that Bennett's claims against the Defendants for breach of contractual obligations of good faith and fair dealing are due to be **DISMISSED**.  Thus, the Defendants' motion to dismiss (Doc. 18) is due to be **GRANTED** as to the claims against Nationstar and BONYM in Count Two of the Amended Complaint (Doc. 10).

---

[10] Similarly, in his response, Bennett asserts that the factual allegations intended to support his claim in Count Two are that the Defendants failed to "properly consider him for loss mitigation," "correct" his account, extend "all reasonable forbearance opportunities," and give him "good faith consideration of temporary suspension of payments and extension of the loan." (Doc. 28, at 19-20 (citing Doc. 10, ¶ 58)).  There are no specific allegations demonstrating how the Defendants did not "properly" consider him, which "reasonable" forbearance opportunities were not extended, and why the Defendants' consideration of loan modifications were not in "good faith."  These conclusory allegations are not enough to withstand Rule 12(b)(6) scrutiny.

### 3. **Violations of 12 C.F.R. §§ 1024.35 and 1024.41 (Counts Five and Six)**

In Count Five of the Amended Complaint, Bennett asserts a claim against Nationstar, individually, and BONYM, through its servicers BOA and Nationstar, for violations of 12 C.F.R. § 1024.41. § 1024.41 is a part of Regulation X, which was promulgated by the Consumer Financial Protection Bureau to supplement RESPA. *See* 12 C.F.R. § 1024.1. § 1024.41 addresses a mortgage servicer's obligations upon receipt of a borrower's application for loss mitigation. (Doc. 10, at 25-32); *see generally* 12 C.F.R. § 1024.41. Bennett alleges that neither BOA nor Nationstar properly performed their obligations upon receipt of a loss mitigation application from Bennett. (Doc. 10, at 25-32).

In Count Six of the Amended Complaint, Bennett asserts a claim against BONYM, through its servicer BOA, for violations of 12 C.F.R. § 1024.35. § 1024.35, also a part of Regulation X, addresses a mortgage servicer's obligations upon receipt of a borrower's notice of error on the borrower's mortgage account. (Doc. 10, at 32-37); *see generally* 12 C.F.R. § 1024.35. Bennett alleges that BOA did not properly respond to Bennett's letters sent to BOA regarding alleged errors regarding the escrow, arrearage, and application of payments on Bennett's mortgage account. (Doc. 10, at 138-42, 145, 148-49).

The Defendants make two arguments with regard to Counts Five and Six: first, that BONYM cannot be liable for violations of § 1024.41 or § 1024.35

because it never serviced Bennett's mortgage account; and second, that Bennett's claims for statutory, "pattern and practice" damages fails for lack of factual support.  The undersigned will address each argument in turn.

### a. **_BONYM's Liability for its Servicers' Alleged Violations of Regulation X_**

BONYM argues that it cannot be liable for violations of § 1024.41 or § 1024.35 because those regulations impose obligations on mortgage *servicers*, and BONYM never serviced Bennett's mortgage account.  (Doc. 19, at 21-22; Doc. 29, at 11-13).

Bennett's Regulation X claims are based on letters he sent to BOA and Nationstar.  (Doc. 10, ¶¶ 38-41, 50-51, 107, 123, 138-41; *see also* Doc. 10, ¶ 35 ("Plaintiff is asserting a claim for relief against Bank of America and Nationstar for breach of the specific rules under Regulation X as set forth below.")).  Bennett does not assert that he sent any letters to BONYM, nor does he assert that BONYM is a "servicer" as defined by 12 C.F.R. § 1024.2 (defining a "servicer" as "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)").

In fact, Bennett concedes that Regulation X regulates the conduct of servicers of federally related mortgage loans, and that BONYM is not a "servicer" as defined by Regulation X.  (Doc. 28, at 27-28).  Instead, Bennett seeks to extend

liability to BONYM through the doctrine of vicarious liability, through which, Bennett contends, BONYM should be liable for BOA's and Nationstar's alleged Regulation X violations.  (*Id.* at 28-29).

Bennett's argument appears to be drawn solely from the reasoning set forth in an unreported decision from the District of New Hampshire where the court determined that vicarious liability is available against a mortgagee for its servicer's RESPA violations.  *See Rouleau v. US Bank, N.A.,* No. 14-CV-568-JL, 2015 WL 1757104, at *6-7 (D.N.H. Apr. 17, 2015).  The *Rouleau* Court acknowledged that it had been "unable to locate a single case that directly addresses the issue and takes a position one way or the other."  *Id.* at *7 n.4.  The *Rouleau* Court nonetheless concluded that "the record before the court fails to reveal any statutory, regulatory, or judicial indication that RESPA does not incorporate traditional tort rules of vicarious liability."  *Id.* at *8.

The undersigned has likewise been unable to find any decisions (other than *Rouleau*) that have directly addressed the application of the doctrine of vicarious liability to a mortgagee for a servicer's RESPA violations.  Contrary to the court's interpretation in *Rouleau*, however, the undersigned finds that the provisions of RESPA and Regulation X specify exactly which type of actor is burdened by those provisions.  *See* 12 C.F.R. § 1024.35 ("a *servicer* shall comply with the requirements of this section. . . ."); 12 C.F.R. § 1024.41 (noting obligations of

"*servicers*"); *see also* 12 U.S.C. § 2605(k)(1)(E) ("A *servicer* of a federally related mortgage shall not . . .  fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this Act.") (emphasis added).[11]

There is no dispute that BOA and Nationstar acted as servicers of Bennett's loan; if BOA or Nationstar violated their obligations under § 1024.35 or § 1024.41, then those companies would be liable.  Because it is also undisputed that BONYM did <u>not</u> act as a servicer, however, BONYM cannot be liable for any obligations of a "servicer" imposed by RESPA and Regulation X.   Indeed, courts routinely dismiss RESPA claims where the alleged wrongs are not stated against a servicer. *See, e.g., Ford v. Saxon Mortg. Servs., Inc*., 2012 U.S. Dist. LEXIS 94393, at **21-23 (N.D. Ala. June 14, 2012) ("This statute puts a burden *only on servicers of loans*. Only Saxon has been identified as a loan 'servicer.' All other defendants are due to be dismissed as to any RESPA claim based on this statute.") (emphasis added).

---

[11] RESPA includes the maker or holder of the loan within the ambit of "servicer" of the loan "if such person also services the loan." 12 U.S.C. § 2605(i)(2); *see also* 12 C.F.R. § 1024.2 (defining a "servicer" as "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)"). Bennett does not contend that BONYM ever acted as a servicer.  (Doc. 28, p. 28).  The undersigned is unaware of any other circumstance under RESPA whereby a mortgagee such as BONYM could be deemed a "servicer," and thus become obligated by a "servicer's" RESPA obligations.

23

BONYM cannot be liable for violations of the Regulation X provisions cited by Bennett—which each set forth obligations of *servicers*.  (*See* Doc. 10 ¶¶ 102-106, 143-147).  In other words, because BONYM is not a servicer, it cannot "fail[] to comply" with the provisions of RESPA or Regulation X asserted by Bennett so as to incur liability under 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure. . . .").

Based on the foregoing authority, the undersigned finds that Bennett's claims against BONYM for violations of 12 C.F.R. § 1024.41 and § 1024.35 are due to be **DISMISSED**.  Thus, the Defendants' motion to dismiss (Doc. 18) is due to be **GRANTED** as to the claims against BONYM in Counts Five and Six of the Amended Complaint (Doc. 10).

### b.  *Statutory "Pattern or Practice" Damages*

Bennett alleges that Nationstar did not perform its obligations under § 1024.41 upon receipt of a December 4, 2014 loss mitigation application from Bennett, specifically with regard to reviewing the application, notifying Bennett whether the application was complete or if there were documents missing, notifying Bennett of his loss mitigation options, and scheduling a foreclosure sale without fully evaluating Bennett for loss mitigation.  (Doc. 10, ¶¶ 50, 123-132).  Bennett seeks actual and statutory damages, as provided by 12 U.S.C. § 2605(f).

(*Id.* ¶¶ 135-36).   The Defendants move to dismiss Bennett's claim for statutory damages.  (*Id.* at 22-24).[12]

RESPA allows recovery of statutory damages for "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."  *See* 12 U.S.C. § 2605(f)(1)(B).   "To seek statutory damages under § 2605, Plaintiff must allege <u>facts</u> showing that there is a pattern or practice of noncompliance with the requirements of the section."  *E.g., Correa v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist. LEXIS 159089, *27 (M.D. Fla. Apr. 9, 2012) (emphasis added). "Merely mouthing the buzzwords 'pattern and practice' in a complaint does not satisfy minimum pleading requirements because it represents a legal conclusion, and such conclusory labels are not credited for Rule 12(b)(6) purposes."  *Selman*, 2013 U.S. Dist. LEXIS 37017, *33-35 (collecting cases).

Bennett alleges that a "pattern and practice" of RESPA violations by Nationstar is proven by the purported existence of "over 20 complaints against Nationstar registered in the [Consumer Financial Protection Bureau's] Consumer Complaint data base in Alabama alone for 'Loss mitigation, collection and foreclosure.'" (Doc. 10, ¶ 134; Doc. 28, at 29-30).  Bennett acknowledges that he

---

[12] Nationstar does not move to dismiss Bennett's claim for actual damages against it. (Doc. 19, at 22 n.7).

does not know "specifics" of these complaints, but seeks to conduct discovery in order to offer evidence to support a pattern and practice claim. (Doc. 28, at 30).

The undersigned agrees with Nationstar that an allegation of nonspecific consumer "complaints" in an online database do not sufficiently state a claim for the "noncompliance" called for by 12 U.S.C. § 2605(f)(1)(B).    There are no alleged "facts showing that there is a pattern or practice of noncompliance with the requirements of the section."    *Correa*, 2012 U.S. Dist. LEXIS 159089, *27 (emphasis added).

Bennett's contention that his "viable causes of action [*i.e.*, his RESPA statutory damages claim] should not be frustrated by his inability to ascertain the relevant facts on his own" underscores his inability to meet his pleading burden. (*See* doc. 28, at 28).  Alleging a pattern and practice of *noncompliance* requires more than a bare assertion that there are "over 20 *complaints* against Nationstar" in the CFPB database.  Simply, "complaints" do not equate to "noncompliance," and the undersigned declines to speculate as to a threshold number of alleged consumer complaints that would sufficiently plead a pattern or practice of noncompliance. *See Brooks v. Scheib*, 813 F.2d 1191, 1193-1195 (11th Cir. 1987) (in considering whether there was a pattern or practice of excessive force by police officers, "the number of complaints bears no relation to their validity" and it is the validity of an excessive force complaint that is pertinent). Bennett has offered no authority to

support the proposition that alleging the existence of consumer complaints in the CFPB database is sufficient factual pleading to sustain a RESPA statutory damages claim.[13]   The Court is provided no information as to the author, date, details, merit, or resolution of these supposed complaints.   This is exactly the type of barebones "pattern and practice" allegation that does not satisfy minimum pleading requirements for Rule 12(b)(6) purposes.   *See Selman*, 2013 U.S. Dist. LEXIS 37017, *33–*35.

Based on the foregoing authority, the undersigned finds that Bennett's claims against the Defendants for statutory, "pattern or practice" damages pursuant to 12 U.S.C. § 2605(f)(1)(B) are due to be **DISMISSED**.   Thus, the Defendants' motion to dismiss (Doc. 18) is due to be **GRANTED** as to the claims against the Defendants for statutory damages in Counts Five and Six[14] of the Amended Complaint (Doc. 10).

## B.  Rule 12(e) More Definite Statement

---

[13] Indeed, such an interpretation could mean that similar claims for statutory damages under RESPA would *always* survive a Rule 12(b)(6) motion, regardless of the merit of any purported consumer complaint.

[14] Bennett claims statutory damages in Count Six, which is not asserted against Nationstar.  (Doc. 10, ¶ 151).  To the extent that Bennett seeks to hold BONYM liable for statutory damages as a result of BOA's alleged "pattern and practice" of noncompliance, *see* Doc. 10, ¶ 120, that claim is due to be dismissed for the reasons discussed in Sections III.A.(3)(a), *supra*, and because the "pattern and practice" allegations against BOA fail for the same reasons as do the "pattern and practice" allegations against Nationstar.  (*See* Doc. 10, ¶ 119-20 (basing BOA pattern and practice claims on "over 100 complaints against Bank of America registered in the [CFPB] data base in Alabama alone for "Loss mitigation, collection and foreclosure")).

Assuming adoption of all of the recommendations made in Section III.A., *supra*, the following causes of action will remain against Nationstar and BONYM (in addition to Bennett's claims for declaratory and injunctive relief, *see* Section III.C., *infra*), thus narrowing the scope of claims that may require a more definite statement:

- Count 3- breach of contract.

- Count 4- FDCPA violations.

Upon examination of the Amended Complaint (Doc. 10) and the parties briefs, (Docs. 19, 28, and 29), the undersigned finds that Bennett's breach of contract and FDCPA claims require repleading, to set forth more specific allegations as to which specific defendant is alleged to have done which specific acts.[15]  The rationale for this finding is set forth below.

The Amended Complaint is a "proverbial shotgun pleading," as it "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief . . ." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).[16]  In this Circuit, "shotgun pleading[s]" have "been roundly,

---

[15]  The Defendants advance several arguments to dismiss the breach of contract and FDCPA claims, but the undersigned declines to address those arguments until these claims are repleaded for the reasons expressed below.  (*See* Doc. 19, at 12-21; Doc. 29, at 6-11).

[16]  *See also, e.g.*, *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the

repeatedly, and consistently condemn[ed] for years, long before this lawsuit was filed." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008). See also, *e.g., id.* at 981-84 (discussing at length the "unacceptable consequences of shotgun pleading"); *Paylor v. Hartford Fire Ins. Co.,* 748 F.3d 1117, 1125-28 (11th Cir. 2014) (discussing "the persistence of the shotgun pleading problem"); *Wagner,* 464 F.3d at 1279 ("'[S]hotgun pleadings wreak havoc on the judicial system.' *Byrne v. Nezhat,* 261 F.3d 1075, 1130 (11th Cir. 2001). Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.").

"Even where a Rule 12(e) motion for a more definite statement is not filed, the Eleventh Circuit has suggested that a district court should order repleading *sua sponte* when faced with a 'shotgun' pleading." *E.g.*, *Betts v. Conecuh County Bd. of Educ.*, No. 13-0356-CG-N, 2014 WL 7411670, *12 n.9 (S.D. Ala. Dec. 30,

---

irrelevancies, a task that can be quite onerous."); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) ("Anderson's complaint is a perfect example of 'shotgun' pleading, in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." (internal citation omitted)); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam) ("Each count incorporates by reference the allegations made in a section entitled 'General Factual Allegations'…while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts…"); *Bates v. Laminack,* No. 2:12–CV–387, 2013 WL 1345193, at *17 (S.D.Tex. Apr. 1, 2013) ("What makes a pleading a 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired.").

.

2014) (citing *Davis*, 516 F.3d at 984 ("In light of defense counsel's failure to request a repleader, 'the court, acting sua sponte, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement.'" (quoting *Anderson*, 77 F.3d at 367 n.5)); *Paylor*, 748 F.3d at 1127 (same); *Ferrell v. Durbin*, 311 F. App'x 253, 259 n.8 (11th Cir. 2009) (per curiam) (unpublished) ("When presented with a shotgun complaint, the district court should order repleading *sua sponte*." (citing *Wagner*, 464 F.3d at 1280)). "District courts have a 'supervisory obligation to *sua sponte* order repleading pursuant to Federal Rule of Civil Procedure 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates.'" *Hand v. ABN AMRO Mortgage Group, Inc.*, No. CV 112–176, 2013 WL 6383128, at *6 (S.D. Ga. December 5, 2013) (quoting *Wagner,* 464 F.3d at 1280).[17]

Though not the most egregious example of "shotgun" pleading, Bennett's Amended Complaint, as drafted, still creates confusion. On a general level, many of the allegations in several counts are only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that "do not

---

[17] *See also Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) ("We recognize the time pressures that the federal district courts face because of crowded dockets; it is much easier in the short term to permit shotgun pleadings—in the hope that the parties will settle their dispute—instead of intervening *sua sponte* to narrow the issues. In the long term, however, the judicial work that results from shotgun pleading is far more time consuming than the work required up front to prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined. As we have previously stated, and state once again, district courts have the power and the duty to define the issues at the earliest stages of litigation.").

suffice" to state plausible claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Bennett does make some factual allegations within his breach of contract and FDCPA claims, by alleging those claims against unspecified "defendants" and incorporating all antecedent allegations into each count, Bennett has made it, if not "virtually impossible," at the very least difficult "to know which allegations of fact are intended to support which claim(s) for relief." *Paylor*, 748 F.3d at 1126 (quotation omitted). Each of these claims includes a paragraph purporting to "reallege[] all paragraphs as if set out here in full." (Doc. 10, ¶¶ 93, 101). The undersigned assumes this to mean that <u>every</u> paragraph in the Amended Complaint, both preceding and following each of these claims, is meant to support Bennett's breach of contract and FDCPA claims. Thus, the Defendants – and the Court – are left to guess as to which allegations are relevant to each claim against each Defendant.

Counts Three and Four are also "shotgun" in nature because "all defendants are charged in each count," (*see* Doc. 10 at 21, 24) and "[t]he [amended] complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the []defendants charged…" *Magluta*, 256 F.3d at 1284.

For example, Bennett asserts breach of contract claims against "Defendants BONY[M], through its servicers Bank of America and Nationstar, and Defendants, Bank of America and Nationstar" for overcharging Bennett's escrow account,

refusing to properly credit payments, "improper accounting, charges, payment processing, loss mitigation efforts and the foreclosure process itself." (Doc. 10, ¶¶ 95-96, 99). It is unclear from these allegations which specific actions Bennett is alleging that <u>BOA</u> took, and which specific actions Bennett is alleging that <u>Nationstar</u> took, such that each servicer could be liable for breach of contract (and purportedly create liability for BONYM for breach of contract).[18]

Similarly, Bennett's FDCPA claims assert that "Defendant servicers, Bank of America and Nationstar" or the "servicing Defendants" violated the FDCPA in a variety of ways. (Doc. 10, ¶¶ 105, 108-110, misnumbered ¶¶ 94-98 on p. 23-24) (*E.g.,* "Defendant servicers, Bank of America and Nationstar, violated the FDCPA, 15 U.S.C. § 1692e(2), by misrepresenting the character, amount, and legal status of the debt." (Doc. 10, ¶ 109)). There are no allegations that are made specific to one of these servicers or the other, such that it is again unclear what actions each took that would create liability for itself or for BONYM for an FDCPA violation. The

---

[18] One example of this problem is that while Bennett purportedly "specifies the errors to the account in paragraph 139-141" (*see* Doc. 28, at 21), paragraphs 139-141 of the Amended Complaint allege errors made by BOA, not Nationstar. (*See* Doc. 10, ¶¶ 139-41). Thus, it is unclear which "errors to the account" are attributable to Nationstar. Another example is that while Bennett claims that "BONYM and Nationstar overcharged Plaintiff's escrow account over a period of more than one year, and further that the Defendants refused to properly credit Bennett's payments," (Doc. 28, at 21), it would have been impossible for Nationstar to have "overcharged Plaintiff's escrow account over a period of *more than one year*" where the Amended Complaint was filed May 5, 2015, and Plaintiff's loan was not transferred to Nationstar for servicing until sometime between September 2014 and December 2014. (*See* Doc. 10, ¶¶ 40-43).

fact that Bennett "demands judgment against the Defendants for their wrongful actions" exacerbates the problem.  (*See* Doc. 10, at 24).

Another source of confusion comes from elsewhere in the Amended Complaint.  Some early paragraphs, purportedly incorporated into both the breach of contract and FDCPA claims, assert various wrongs against "BONYM and its agents," or "Defendants BONY[M], through its servicers Bank of America and Nationstar," relating to loss mitigation efforts, application and calculation of payments, threats of foreclosure, and other acts.  (*See, e.g.,* Doc. 10, ¶¶ 58, 67-69). While the undersigned imagines that some of these allegations are intended to support Bennett's breach of contract and FDCPA claims, the state of the pleading makes it difficult, if not impossible, to assign particular allegations to particular defendants in order to properly consider these claims as against Nationstar and BONYM.

"Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading." *Paylor*, 748 F.3d at 1127. Given the Eleventh Circuit's explicit and repeated condemnation of "shotgun" pleading, the examples of confusion noted above, and the recommended dismissal of a number of Bennett's claims, *see supra*, the undersigned finds that repleader under Rule 12(e) is due in order for Bennett to clarify his causes of

action and prevent this case from devolving into a "discovery goat rodeo." *Paylor*, 748 F.3d at 1127.

Accordingly, the undersigned finds that repleading of Bennett's breach of contract (Count Three) and FDCPA (Count Four) claims is required in order to properly evaluate the adequacy of the pleading of those claims as against each Defendant. Therefore, the Defendants' Rule 12(b)(6) motion to dismiss as to Counts Three and Four is due to be **DENIED** at this time. The undersigned **RECOMMENDS** that Bennett be required to adhere to the following standards in repleading his complaint:

1. Bennett shall omit mention of any claim that is dismissed by the Court's Order addressing this Report and Recommendation.

2. In filing an Amended Complaint, Plaintiff **must not** file another shotgun complaint. Bennett shall refrain from incorporating multiple causes of action into one count, as well as from the wholesale adoption by reference of all allegations in the Amended Complaint into each cause of action. Instead, he must list each discrete cause of action (e.g., breach of contract or FDCPA violations) in a separate count and identify with specificity the factual allegations used to support each discrete claim against each individual Defendant.

3. In being ordered to replead under Rule 12(e), Bennett is not being granted leave to amend his complaint under Federal Rule of Civil Procedure 15(a)(2). Thus, he shall not use this as an opportunity to add new claims and/or parties which are not apparent from the allegations in his Amended Complaint (Doc. 10). *Cf. Washington v. Util. Trailer Mfg. Co.,* No. 1:13–CV–610–WEF, 2014 WL 2831189, at *5 n.5 (M.D. Ala. June 23, 2014) ("Plaintiffs may not use this order to re-plead Count I as an opportunity to add new claims.").

### C. Declaratory and Injunctive Relief

In the final section of his Amended Complaint, Bennett asserts claims for preliminary and permanent injunctive relief, as well as for declaratory relief. (Doc. 10, at 37-39). The Defendants argue that Bennett's claim for injunctive relief is moot because the scheduled foreclosure sale that predicated this action did not occur and has not been rescheduled. (Doc. 19, at 24). The Defendants also argue that Bennett's claim for declaratory relief is duplicative and superfluous to his other claims. (*Id.* at 24-25).

The undersigned agrees with the Defendants that Bennett's claim for *preliminary* injunctive relief is moot. The threat of an injury must be "real and immediate" rather than "merely conjectural or hypothetical" in order to warrant injunctive relief. *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994).

However, the undersigned finds that Bennett's claims for a permanent injunction and declaratory relief should not be dismissed at this time. These claims depend in part on the District Court's decision whether to adopt the recommendations herein. *See Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1444 (11th Cir. 1997) ("Injunctive or declaratory relief may not be available in a given case…, but it will be available in some situations."). The undersigned believes these claims are best reconsidered in light of re-stated pleadings as set forth in Section III.B., *supra*.

Accordingly, the Defendants' motion to dismiss is due to be **GRANTED** as to Bennett's claim for preliminary injunctive relief, and **DENIED** as to Bennett's claims for a permanent injunction and declaratory relief.

## IV.    *Conclusion*

In accordance with the above-stated analysis, the undersigned **RECOMMENDS** as follows:

1.  The Defendants' Rule 12(b)(6) motion (Doc. 18) should be **GRANTED** as to the following claims:

    •   Bennett's negligence and wantonness claims against Nationstar and BONYM (Count One).

    •   Bennett's negligent misrepresentation claims (to the extent they are asserted separately and apart from Bennett's negligence claims) against Nationstar and BONYM (Count One).

    •   Bennett's claim for breach of contractual obligations of good faith and fair dealing against Nationstar and BONYM (Count Three).

    •   Bennett's claims for violations of 12 C.F.R. § 1024.41 and § 1024.35 against BONYM (Counts Five and Six).

    •   Bennett's claims for statutory damages against Nationstar and BONYM based on an alleged "pattern or practice" of RESPA violations (Counts Five and Six).

    •   Bennett's claim for preliminary injunctive relief (Doc. 10, at 37-39).

2.  The Defendants' Rule 12(b)(6) motion (Doc. 18) should be **DENIED** as to Bennett's breach of contract (Count Three), FDCPA (Count Four), and permanent injunctive and declaratory relief claims, and Bennett should be **ORDERED** *sua sponte* to replead as set out in Section III.B., *supra*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or

refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of August, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**